Sandra K. EAGLE as Personal Representative of the ESTATE OF Robert V. EAGLE and Sandra K. Eagle, Respondents,

v.

Thomas W. REDMOND, Appellant.

No. WD 60249.

Missouri Court of Appeals, Western District.

Aug. 6, 2002.

See also 946 S.W.2d 291.

Don A. Peterson, Kansas City, for Respondents.

John E. Redmond, Kansas City, for Appellant.

Before: HOWARD, P.J., and SMITH and NEWTON, JJ.

EDWIN H. SMITH, Judge.

Thomas W. Redmond appeals from the judgment of the circuit court for the respondents, the Estate of Robert V. Eagle and Sandra K. Eagle, in their suit against the appellant (Redmond lawsuit) to pierce the corporate veil of Redmond Building Corporation (RBC) and hold the appellant personally liable for a judgment obtained by the respondents[1] against RBC in a prior lawsuit (RBC lawsuit), awarding the respondents $24,561.50 in damages, which the jury found that they had sustained as a direct result of RBC's failure to construct their home in a workmanlike manner. In its judgment in the Redmond lawsuit to pierce the corporate veil, the circuit court ordered the appellant to pay the respondents a total of $53,527.06, representing payment of the $24,561.50 judgment entered in the RBC lawsuit, $10,454.12 in statutory interest that had accrued on that judgment, and attorney's fees and expenses of $18,511.44.

The appellant raises six points on appeal. In Point I, he claims that the trial court erred in overruling his motion for a directed verdict at the close of all the evidence because the respondents failed to make a submissible case for piercing the corporate veil of RBC. In Point II, he claims that the trial court erred in giving the verdict-directing instruction of the respondents, Instruction No. 5, submitting their claim for piercing the corporate veil of RBC, because it failed to submit the ultimate disputed facts the jury was required to decide in order for it to find that the corporate veil of RBC should be pierced. In Point III, he claims that the trial court erred in rejecting its proffered verdict director, Instruction A, in lieu of Instruction No. 5, because it submitted the requisite ultimate disputed facts. In Point IV, he claims that the trial court erred in awarding the respondents in the Redmond lawsuit accrued interest on the judgment entered in the RBC lawsuit because there was no statutory or contractual basis for doing so. In Point V, he claims that the trial court erred in awarding the respondents attorney's fees "because the attorney's fees were the subject of a contingent fee contract between [respondent Sandra K. Eagle] and her attorney." In Point VI, he claims that the trial court erred "in submitting the case to the jury because [Respondents'] cause of action is barred by *res judicata* in that their claim to pierce the corporate veil of [RBC] must have been joined with their breach of contract claim against RBC" in the RBC lawsuit.

The judgment of the trial court piercing the corporate veil of RBC and awarding the respondents $53,527.06 from the appellant is affirmed.

---

1. In the RBC lawsuit, Robert V. Eagle was still alive and was a party plaintiff. However, at the time of the Redmond lawsuit, Robert was deceased. As a result, the Redmond lawsuit was brought by Sandra in her individual capacity and in her capacity as the personal representative of her husband's estate.

## Facts

On February 12, 1994, the respondents entered into a contract with RBC for the construction of a new house. On April 27, 1995, the respondents filed suit against RBC claiming that RBC breached its contract with them by failing to construct the house in a workmanlike manner. An ensuing jury trial resulted in a verdict in favor of the respondents, awarding them $24,561.50, which included $13,000 in attorney's fees. RBC appealed the judgment, which was affirmed by this court in *Eagle v. Redmond Bldg. Corp.*, 946 S.W.2d 291 (Mo.App.1997).

The judgment for the respondents remained unsatisfied, and, in September of 1999, the respondents filed a petition to pierce the corporate veil of RBC and hold the appellant personally liable for the judgment. Upon a jury verdict in favor of the respondents, the trial court entered a judgment ordering the appellant to pay the respondents $53,527.06, which the trial court stated was "constituted of the $24,561.50 principal and $10,454.12 interest due on the Eagle judgment against Redmond Building Corporation together with attorney fees and expenses in the sum of $18,511.44 for a total judgment of $53,527.06 with interest thereon at the judgment rate provided for in Section 408.040 from and after March 20, 2001, and have execution therefor."

This appeal followed.

## Standard of Review

■■■ The standard for review of a trial court's denial of motions for directed verdict and judgment notwithstanding the verdict is whether the plaintiff has made a submissible case. *Brown v. Hamilton Ins. Co.*, 956 S.W.2d 417, 419 (Mo.App.1997). An appellate court reviews the evidence and reasonable inferences therefrom in a light most favorable to the jury's verdict, disregarding evidence to the contrary. *Seitz v. Lemay Bank & Trust Co.*, 959 S.W.2d 458, 461 (Mo. *banc* 1998). An appellate court will reverse a jury's verdict for insufficient evidence only where there is a complete absence of probative fact to support the jury's conclusion. *Id.* Where reasonable minds can differ on the question before the jury, a court may not disturb the jury's verdict. *Feely v. City of St. Louis*, 898 S.W.2d 708, 709 (Mo.App.1995).

## I.

In Point I, the appellant claims that the trial court erred in overruling his motion for a directed verdict at the close of all the evidence because the respondents failed to make a submissible case for piercing the corporate veil of RBC. Specifically, he claims that the respondents failed to present sufficient evidence to establish the requisite elements for piercing the corporate veil in that there was no evidence that: (a) [the appellant] "dominated the finances and business practice of [RBC] with respect to the real estate contract executed between the [respondents] and [RBC] in February, 1994 so as to that transaction, [RBC] had no separate mind, will or existence of its own"; (b) [the appellant] "exercised control of [RBC] to commit fraud in contravention of the [respondents'] legal rights with respect to the real estate contract executed in February, 1994"; and (c) [the appellant] "proximately caused any damage to the [respondents]."

■■■ "There is no requirement that the argument section of an appellate brief be perfect. An appellant's brief, however, should adequately present and address the issues to be decided." *State v. Hendricks*, 944 S.W.2d 208, 210 (Mo. *banc* 1997) (citations omitted). In that regard, it is well settled that an appellant must develop, in the argument section of the brief, error raised in the point relied on. *Id.; Stickley*

*v. Auto Credit, Inc.*, 53 S.W.3d 560, 564 (Mo.App.2001); *State ex rel. Greene v. Greene*, 51 S.W.3d 537, 541 (Mo.App.2001); *Weisenburger v. City of St. Joseph*, 51 S.W.3d 119, 124 (Mo.App.2001); *State v. Mitchell*, 41 S.W.3d 574, 578 (Mo.App. 2001); *Estate of Phillips v. Matney*, 40 S.W.3d 15, 19 (Mo.App.2001); *In re T.E.*, 35 S.W.3d 497, 506 (Mo.App.2001); *Thomas v. Lloyd*, 17 S.W.3d 177, 188 (Mo.App. 2000). "An argument is not properly before an appellate court if it merely makes bald assertions of general principles of law and never develops how such principles mandate reversal in the factual context of the particular case." *Mitchell*, 41 S.W.3d at 578 (citation omitted). "It is not within [the appellate court's] province ... to speculate about, then decide, arguments that are not asserted or that are merely asserted but not developed." *Hendricks*, 944 S.W.2d at 210 (citations omitted). A "submission of error, being without reasoned argument ... does not require, or even allow, a decision." *Id.* Thus, errors raised in the points relied on, which are not supported by argument, are deemed abandoned and present nothing for appellate review. *Thomas*, 17 S.W.3d at 188.

In his argument as to his submission of error in Point I, the appellant quotes at length from a number of cases concerning the tests for determining whether to pierce the corporate veil. However, he makes no attempt to develop how the principles of law he discusses mandate reversal in the factual context of his case. He simply makes bald assertions of general principles of law. Because the appellant fails to ade-

quately develop the argument of his claim of error in this point, we deem his claim abandoned.

Point denied.

## II.

In Point II, the appellant claims that the trial court erred in giving the verdict-directing instruction proffered by the respondents, Instruction No. 5, submitting their claim for piercing the corporate veil of RBC, because it failed to submit the ultimate disputed facts the jury was required to decide in order for it to find that the corporate veil of RBC should be pierced.[2] Specifically, he claims that the instruction:

> failed to hypothesize any facts of [the appellant] being the alter-ego of [RBC] at the time of the execution of the real estate contract between [the respondents] and [RBC] in February, 1994 and in that it failed to hypothesize any facts of fraud by [the appellant] with respect to the real estate contract executed between [the respondents] and [RBC] in February, 1994.

The appellant begins his argument in this point by quoting at length from the transcript of the instruction conference concerning the giving of Instruction No. 5. From that, he transitions by stating, "[Respondents] further relied on the case of *66, Inc v. Crestwood Commons Redevelopment Corporation et al., supra,* to support the proposition in the instruction that [RBC] was not adequately capitalized." He then proceeds to discuss the

---

**2.** The claim of error raised in this point with respect to the giving of Instruction No. 5 was neither raised at the instruction conference nor in the appellant's motion for new trial. While the appellant objected at the instruction conference and in his motion for new trial as to the sufficiency of the evidence to support the submission of the respondents' claim to

pierce the corporate veil of RBC, at no time did he argue that the verdict-directing instruction proffered by the respondents failed to submit the ultimate disputed facts. Thus, the issue raised in this point was not preserved for appellate review. *A.G. Edwards & Sons, Inc. v. Drew*, 978 S.W.2d 386, 395 (Mo. App.1998).

facts and holding in that case for some two and one-half pages of his brief, concluding with: "There was no evidence produced by the [respondents] that [RBC] was established for a wrongful purpose as a matter of law." From there, he lists the three required proof elements for piercing the corporate veil and then concludes that the respondents "presented no evidence to establish and prove" those elements. He then launches into a discussion of *Sansone v. Moseley*, 912 S.W.2d 666 (Mo.App.1995), the case primarily relied upon by the respondents for the giving of Instruction No. 5, concluding his discussion with: "These cases reflect the personal involvement of the individual defendants with each of the plaintiffs. They are cases in which the individual defendants attempted to avoid liability for a personal wrongful act or to shelter themselves from personal obligations. Each individual personally benefitted from the corporations failure."

The appellant, as he did in Point I, wholly fails to develop how the principles of law he discusses mandate reversal in the factual context of his case. He simply makes bald assertions of general principles of law and concludes that the evidence was insufficient for the issue of piercing RBC's corporate veil going to the jury. Because the appellant fails to adequately develop the argument of his claim of error in this point, we deem it abandoned. *Thomas*, 17 S.W.3d at 188.

### III.

■ In Point III, the appellant claims that the trial court erred in rejecting its proffered verdict director, Instruction A, in lieu of Instruction No. 5, because it submitted the requisite ultimate disputed facts in that:

it requires the jury to find that [RBC] had no mind or will of its own at the time of the execution of the sales contract between [the respondents] and [RBC] of February, 1994, and in that it requires the jury to find that [the appellant] acted fraudulently or dishonestly toward [the respondents] at the time of the execution of the sales contract between [the respondents] and [RBC] in February, 1994.

In his "argument" as to this point, the appellant simply recites the standard of review and then quotes Instruction A. In light of this and given the fact that this point is inextricably intertwined with Point II, we can only assume that the appellant intended for his argument in Point II to apply to his argument in this point. In any event, given the cited deficiency of the appellant's argument in Point II and the lack of any argument in Point III, the claim of error raised in this point is deemed abandoned. *Thomas*, 17 S.W.3d at 188.

### IV.

■ In Point IV, the appellant claims that the trial court erred in awarding the respondents in the Redmond lawsuit accrued interest on the judgment entered in the RBC lawsuit because there was no statutory or contractual basis for doing so. Specifically, the appellant claims that the award as to interest should be limited to interest accruing from the time of judgment in the Redmond lawsuit.

Due to his apparent confusion as to which party has the burden of persuasion on appeal, rather than citing applicable authority in support of his claim of error, as he is required to do by Rule 84.04(d)(5), the appellant devotes his entire argument to distinguishing the cases on which he asserts the respondents relied at trial. In that regard, he states:

[Respondents have] cited two cases in support of this claim, but a reading of both substantiates that neither one is

applicable to the matter in controversy presently before this Court. [Respondents'] counsel has conveniently omitted the pertinent facts of both *Palmer v. Palmer*, 805 S.W.2d 326 (Mo.App. W.D. 1991) and *Schnucks v. Bridgeton Health and Fitness, Inc.*, 884 S.W.2d 733 (Mo. App.1994).

After discussing these cases, he concludes: "Neither of these cases support the [Respondents'] position that [they are] entitled to an award of interest in this cause for the amount of interest which has accrued on the Judgment entered in Case Number: CV95–8670 on June 27, 1996, *Eagle v. Redmond Building Corporation.*" He then wraps it up by stating:

The case of *Sansone v. Moseley*, 912 S.W.2d 666 (Mo.App. W.D.1995) cited by the [Respondents] does not stand for any proposition related to [Respondents'] claim that interest be awarded in this cause. It is a case wherein the court determined the corporate veil should be pierced based on the tripartite test enumerated in *Collett [Collet] v. American National Stores, Inc.*, 708 S.W.2d 273 [sic] for its determination of the issues in favor of the plaintiff *Sansone* [sic].

Noteworthy of that case is the fact that the defendant was indebted to plaintiff for work performed by the plaintiff prior to the time that plaintiff sued and obtained a judgment against the corporate defendant in Johnson County, Kansas. Plaintiff subsequently filed its action in Jackson County, Missouri to pierce the corporate veil and impose liability for the Johnson County judgment against the individual defendant *Moseley* [sic].

The failure of the appellant to cite applicable authority in support of his argument is basis alone for us to find that his point is abandoned. *Donovan v. Temp. Help*, 54

S.W.3d 718, 720 (Mo.App.2001). His failure to develop any argument in support of his claim of error is all the more reason for treating his point as abandoned. *Thomas*, 17 S.W.3d at 188.

### V.

■ In Point V, the appellant claims that the trial court erred in awarding the respondents attorney's fees "because the attorney's fees were the subject of a contingent fee contract between [respondent Sandra K. Eagle] and her attorney."

After citing the standard of review, the appellant commences his argument on this point with:

Here again, the [Respondents have] cited two cases in support of this claim, but as with the issue of interest, a reading of both cases substantiates that neither one is applicable to the matter in controversy before this Court.

Knowledge of the facts in the case of *Next Day Motor Freight, Inc. v. Hirst*, 950 S.W.2d 676 (Mo.App. E.D.1997) and *Stavrides v. Zerjav*, 927 S.W.2d 486 (Mo. App.1996) is essential.

After discussing *Stavrides*, he states: "Obviously, the [Respondents] in this cause [have] not incurred any attorneys fees in defense of any collateral litigation in that there has been no instance when either [RBC] nor [Appellant] Tom Redmond instituted any type of litigation against the [Respondents]." He then proceeds to discuss *Next Day Motor Freight*. After doing so, he states: "This case is no different in that the [Respondents'] attorney obtained attorneys fees in the first litigation of $14,000 and that was extended in effort to collect for the [Respondents] $10,000 in damages. The [Respondents'] attorney now seeks to obtain another $18,000 in attorney's fees in an effort to impose liability against the individual [Appellant] Thomas W. Redmond for the Judgment

entered against [RBC]." From there, he spends four and one-half pages of his brief quoting from the record as to testimony by attorney Allan Culp, called to testify as to the reasonableness of the attorney's fees requested by the respondents. He then concludes by asserting that: "[Respondents'] counsel obviously was aware of the fact that there was no basis for him claiming attorney fees in this litigation"; and "Obviously, the [Respondents] are not entitled to expenses incurred as well as any attorneys fees. Any expenses associated with the protection of the second case would be at [Respondents'] cost because of the dismissal."

The failure of the appellant to cite any authority in support of his claim or to develop any argument with respect to his claim beyond mere conclusions and recitation of general principles of law does not preserve anything for our review. *In re T.E.*, 35 S.W.3d at 506.

## VI.

 In Point VI, the appellant claims that the trial court erred "in submitting the case to the jury because [Respondents'] cause of action is barred by *res judicata* in that their claim to pierce the corporate veil of [RBC] must have been joined with their breach of contract claim against RBC" in the RBC lawsuit.

As to this point, other than his statement as to the standard of review, the appellant's argument consists of the following:

> *Res judicata* was pleaded as an affirmative defense by Defendant (Defendant's responsive pleading filed on December 16, 1999) (L.F.–7). In the case of *66 Inc. v. Crestwood Commons Redevelopment Corp., et al.*, 998 S.W.2d 32 (Mo. banc 1999) the Court stated at Page 42 "*Res judicata*, also known as claim preclusion, is a judicially created

doctrine to inhibit multiplicity of lawsuits. The doctrine operates as an affirmative defense, under Rule 55.08, which only if properly invoked, will prevent litigation of a claim arising out of the same transaction or occurrence that is the subject of the earlier judgment."

This argument is nothing more than a bare recital of the legal principle of *res judicata* with no discussion of how it mandates a reversal in the factual context of his case. As such, his claim of error in this point is deemed abandoned. *Mitchell*, 41 S.W.3d at 579.

## Conclusion

The judgment of the trial court for the respondents and against the appellant for $53,527.06 is affirmed.

HOWARD, P.J., and NEWTON, J., concur.