**Jacob D. ASCOLI and Mary E. Bolton, Appellants,**

v.

**Joel R. HINCK, BGS Installations, Inc, and St. Clair Roofing Company, Respondents.**

**Nos. WD 68986, WD 68992.**

Missouri Court of Appeals, Western District.

June 24, 2008.

---

Kenneth S. Clay, Thad R. Mulholland, Columbia, MO, for appellants.

Chad M. Deroode, St. Louis, MO, for respondents.

PAUL M. SPINDEN, Judge.

Injured when the motorcycle that he was operating collided with a vehicle driven by Joel R. Hinck, Jacob D. Ascoli sued Hinck and the two firms with which Hinck was associated, St. Clair Roofing Company and its subsidiary BGS Installations, Inc. Mary E. Bolton was a passenger on Ascoli's motorcycle. She joined Ascoli in suing Hinck and the two firms for negligence. The circuit court granted summary judgment for St. Clair and BGS on the ground that Hinck was an independent contractor for whose conduct the firms were not vicariously liable. The circuit court certified the judgments for early appeal under Rule 74.01, and Ascoli and Bolton appealed separately. Because their appeals arise from the same events and present the same issues, we consolidate them.

The collision giving rise to the lawsuits occurred on May 19, 2005, on U.S. 63 in Boone County. Hinck had completed installing siding for St. Clair and BGS in Osage Beach and was returning to the firms' headquarters in Columbia.

Ascoli and Bolton alleged that St. Clair and BGS were liable for Hinck's negligent driving under either *respondeat superior* or joint venture. St. Clair and BGS filed motions for summary judgment on both theories. They contended that undisputed evidence established that Hinck was an independent contractor for whom they were not vicariously liable. In appealing the circuit court's summary judgment, Ascoli and Bolton assert that the circuit court erred in concluding that no material issue of fact was in genuine dispute because they contested Hinck's status as an independent contractor. They assert that they presented evidence that, if believed, established that Hinck was either St. Clair's and BGS's employee or was engaged in a joint venture with them.

We review a circuit court's summary judgment *de novo*. *ITT Commercial Finance Corporation v. Mid–America Marine Supply Corporation*, 854 S.W.2d 371, 376 (Mo. banc 1993). Summary judgment is proper only when the parties are not genuinely disputing material factual issues and when the moving party is entitled to judgment as a matter of law. *Id.* at 380. When we review a circuit court's summary judgment, we view the record in the light most favorable to the party against whom

the circuit court entered judgment. *Id.* at 376.

A right to judgment as a matter of law differs significantly depending on whether or not the moving party is a claimant or a defending party. *Id.* at 381. St. Clair and BGS were defending parties; therefore, their burden was to establish a *prima facie* case for summary judgment by one of three means:

> [B]y showing (1) facts that negate any one of the claimant's elements facts, (2) that the non-movant, after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of any one of the claimant's elements, or (3) that there is no genuine dispute as to the existence of each of the facts necessary to support the movant's properly-pleaded affirmative defense. Regardless of which of these three means is employed by the "defending party," each establishes a right to judgment as a matter of law.

*Id.* For the judgment in this case to be deemed final and appealable, St. Clair's and BGS's burden was to establish that they were entitled to judgment as a matter of law as to every theory of recovery in the petition. *Bost v. Clark,* 116 S.W.3d 667, 674 (Mo.App.2003).

■ Ascoli's and Bolton's burden in establishing that St. Clair and BGS were liable for Hinck's driving was to establish that Hinck was St. Clair's and BGS's employee and that he committed the alleged negligence while acting within the scope of their employment of him. *Bargfrede v. American Income Life Insurance Company,* 21 S.W.3d 157, 161 (Mo.App.2000). To prove that Hinck was St. Clair's and BGS's employee, Ascoli's and Bolton's burden was to establish that the firms had a right to control and to direct Hinck's conduct while he performed his job duties. *Id.* at 162. Control is the pivotal factor in distinguishing an employee from an independent contractor or other types of workers. *Leach v. Board of Police Commissioners of Kansas City,* 118 S.W.3d 646, 649 (Mo. App.2003). Ascoli and Bolton were not obligated under this burden to prove that St. Clair and BGS actually controlled Hinck's conduct—only that they had a right to do so. *Bargfrede,* 21 S.W.3d at 162. This determination typically turns on the individual facts of each case. *Id.*

■ Indeed, the courts have listed numerous factors that a fact-finder should use in distinguishing employees from independent contractors and other workers. These factors include (1) the amount of control that is exerted over the details of an individual's work (the more control, the more likely the individual's status is employee); (2) whether or not the worker is engaged in a distinct occupation (typically an indicator of an employee) or a business (typically an indicator of an independent contractor); (3) the amount of skill required for performing a particular occupation (the more skill required, the more likely the individual is an independent contractor); (4) whether or not the worker supplies the instrumentalities, tools, and the place for doing the work (independent contractors typically supply their own instrumentalities, tools, and place for doing their work); (5) the length of time for which the worker is engaged to do the job (an indefinite period typically indicates an employee and a set, definite period indicates an independent contractor); (6) the method of payment, whether according to time or by the job (payment according to time typically indicates an employee); (7) whether or not the worker routinely performs his or her duties as part of the paying parties' regular business (indicating an employee); and (8) whether or not the parties believe that they are creating a master-servant relationship. *Id.* No one

of these factors is determinative. A fact-finder must consider them collectively. *Id.*

Whether an individual is an employee or independent contractor is a question of fact to be determined by a fact-finder. *Id.* The circuit court can decide the issue only when no material facts giving rise to the determination is genuinely in dispute and when only one conclusion is reasonable. *Id.*

St. Clair and BGS contend that they presented undisputed evidence that they had no right to control Hinck's work and that he was an independent contractor. They alleged a number of factual indicators giving rise to this inference. These indicators included Hinck's being free to turn down installation projects that they offered him;[1] Hinck's admitting that he was not an employee; their compensating Hinck by the job rather than according to time; Hinck's having no say in their business objectives or decisions; their not having instructed Hinck on the day of the accident to drive to Columbia to drop off excess supplies, as he was doing when he collided with Ascoli's motorcycle; Hinck's deciding alone when to leave the job site and the route to take to Columbia; Hinck's being free to do jobs for firms other than St. Clair and BGS; their not requiring Hinck to follow any special guidelines— only those required by the Occupational Safety and Hazards Administration; their requiring Hinck to warrant his own work at his own expense; Hinck's job performance not being supervised by St. Clair's and BGS's supervisors; their not requiring Hinck to work specific hours or specific days; their not ensuring that Hinck or his subcontractors were using safety equipment; Hinck's having a key to their place of business so he could pick up materials and drop them off at his convenience; their not requiring Hinck to return waste materials to their warehouse; their not issuing a uniform to Hinck or requiring him to wear any apparel bearing their name or logo; Hinck's providing his own tools; their requiring Hinck to provide for his own transportation and to carry general liability insurance; Hinck's obtaining his own certificate of liability and workers' compensation insurance; Hinck's paying his own Social Security taxes and unemployment taxes; their reporting payments to him on an Internal Revenue Service Form 1099; Hinck's being responsible for selecting and paying his own workers; and their having no formal termination process other than simply not engaging Hinck for additional work. We agree with St. Clair, BGS, and the circuit court that these facts imply that Hinck was an independent contractor and not St. Clair's or BGS's employee. Hence, St. Clair and BGS made a *prima facie* case for summary judgment against Ascoli and Bolton by negating the control element of the latter's *respondeat superior* claims.

Because St. Clair and BGS made a *prima facie* case for summary judgment, the only way for Ascoli and Bolton to avoid summary judgment was to place in genuine dispute one or more of the material facts on which St. Clair and BGS relied. *ITT Commercial Finance*, 854 S.W.2d at 381. A genuine issue exists when the record contains competent evidence of "two plausible, but contradictory, accounts of the essential facts." *Id.* at 382. "[I]f the movant requires an inference to establish his right to judgment as a matter of law, and the [summary judgment record] reasonably supports any inference other than (or in addition to) the movant's inference, a

---

1. The record does not indicate whether or not Hinck actually turned down any of St. Clair's or BGS's projects.

genuine dispute exists;" thus, the movant is not entitled to summary judgment. *Id.* For the non-moving party to dispute a fact sufficiently to defeat a *prima facie* case for summary judgment, he or she must counter the moving party's evidence with more than a general denial. *Id.* He or she must present evidentiary support for specific facts that establish a "genuine issue for trial." Rule 74.04(c)(2).

Ascoli and Bolton attempted to defeat St. Clair's and BGS's *prima facie* case by directly disputing the facts that the firms averred and by listing additional facts, in both cases with citations to the record, that they alleged disputed the firms' contention that Hinck was an independent contractor. For example, in response to St. Clair's and BGS's allegation that Hinck was a subcontractor who was free to accept or to deny the firms' engagements, Ascoli and Bolton presented evidence that Hinck's relationship with the firms had been an exclusive one for eight years, and the only "outside" jobs that Hinck had performed in the last few years were for his brother and father-in-law. In response to St. Clair's and BGS's averment that they did not require Hinck to perform tasks on a certain day and could drop off materials at any time, Ascoli and Bolton presented evidence that Hinck was bound by an agreement with St. Clair and BGS to return unused materials and garbage to St. Clair's facility at the conclusion of a job. They also showed evidence that, on the day when his vehicle collided with Ascoli's motorcycle, Hinck had made specific arrangements with Gary Decker, his supervisor at St. Clair, to drop off materials. In response to the firms' allegation that they did not require Hinck to follow any special guidelines, Ascoli and Bolton presented evidence that Hinck's contract with the firms required him to obey BGS's installation and safety guidelines and OSHA's regulations. He also had agreed to keep his job site clean, return all provid-ed documents to BGS, return any equipment that he borrowed from BGS, and to install a St. Clair yard sign at all job sites. Ascoli and Bolton also alleged that St. Clair had ordered installers to install siding in a different manner than how the installers normally installed siding. In response to St. Clair's and BGS's allegation that their supervisors did not supervise installation crews, Ascoli and Bolton presented evidence that St. Clair's supervisor scheduled jobs; met with subcontractors at the beginning of the jobs to outline St. Clair's and BGS's expectations concerning safety, customer relations, job site appearance, and job progression; supervised the crews; and made sure that jobs proceeded according to schedule. Ascoli and Bolton also alleged that the supervisor was required to visit the job sites to ensure that the job was proceeding on schedule, and if the job was not proceeding, he was required to remedy the situation. The firms also required installation crews to fill out progress reports. Furthermore, Ascoli and Bolton alleged that, in this case, Gary Decker, Hinck's supervisor, checked with Hinck daily. Ascoli and Bolton also alleged that the firms had provided siding installation equipment and materials to installation crews. In addition to disputing the facts that St. Clair and BGS relied on, Ascoli and Bolton alleged what they termed as additional undisputed facts: St. Clair's and BGS's requiring Hinck to get customers' signatures of phase completion sheets and financing papers on St. Clair's behalf; St. Clair's and BGS's occasionally requiring Hinck to collect payments for them; St. Clair's requiring Hinck to return extra materials; St. Clair's giving Hinck and other installers T-shirts and hats that displayed St. Clair's logo; and St. Clair's requiring Hinck to notify Decker if Hinck did not plan to work on a particular date.

From the evidence that Ascoli and Bolton presented, a reasonable juror could

infer that St. Clair and BGS exercised sufficient control over Hinck for Hinck to be deemed an employee and not an independent contractor. Thus, although the evidence presented by St. Clair and BGS supported a reasonable inference that Hinck was an independent contractor, the record also supported the contrary inference. Because the record supports two plausible but competing inferences, the circuit court should have found that a genuine dispute of material fact exists. *Bargfrede*, 21 S.W.3d at 162.

This conclusion is true even though St. Clair and BGS complied with Rule 74.04(c)(2) by denying most of Ascoli's and Bolton's additional facts. Once Ascoli and Bolton complied with Rule 74.04(c)(2) by making specific references to the record, they were entitled as the non-moving parties to rely on disputed facts to defeat the summary judgment motions. *Firestone v. VanHolt*, 186 S.W.3d 319, 326 (Mo.App. 2005). This is true in either the case of the movant's facts or the non-movant's additional facts. *Id.*

Having failed to defeat Ascoli's and Bolton's claims on all theories pleaded, the circuit court erred in entering the summary judgments for St. Clair and BGS. We, therefore, vacate the circuit court's judgments and remand the case for further proceedings.

JAMES E. WELSH, Presiding Judge, and ALOK AHUJA, Judge, concur.